# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **GLADYS COPELAND AND** | ) | |
| **DEBBIE COLBURN, INDIVIDUALLY** | ) | |
| **AND ON BEHALF OF ALL OTHERS** | ) | |
| **SIMILARLY SITUATED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION CASE NO:** |
| | ) | **(CLASS ACTION)** |
| **v.** | ) | |
| | ) | |
| **STAR SNACKS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## INDIVIDUAL AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Gladys Copeland ("Plaintiff") and Plaintiff Debbie Colburn, file this Individual and Class Action Complaint against Defendant, Star Snacks, LLC (hereinafter "Star Snacks") and allege as follows:

## I.   INTRODUCTION

1.  Plaintiffs bring this action individually and on behalf of a class of similarly situated persons as a result of Star Snacks marketing its Imperial Whole Cashews (sometimes referred to as "the product") in violation of Alabama and federal food law regarding the packaging and marketing of said product.  Plaintiffs thus file this Complaint for claims of breach of warranty, for breach of implied agreement, and

1

deceptive trade practice.

## II. THE PARTIES

2.  Plaintiff, Gladys Copeland, is a resident of Montgomery County, Alabama and was at the time of the below-mentioned purchase.  The Plaintiff, Debbie Colburn is a resident of Jefferson County, Alabama and was at the time of her below-mentioned purchase.

3.  Defendant Star Snacks is a leading manufacturer and distributor of branded and private label nuts, trail mixes and dried fruits.  It also produces its own product lines that include Star Snacks, Imperial Nuts and Platinum (nuts).  Star Snacks claims to be a single-source for custom packed snacks, committed to providing retailers with the products at the right price point.  Star Snacks' claims that their ability to source nationally and globally allows it to purchase in volume while simultaneously monitoring commodity prices.  Star Snacks partners with numerous retailers such as chain drug stores, supermarkets, national distributers, club stores and deep discount stores such as Big Lots, Dollar Tree and Family Dollar.  Star Snacks' products are available in the United States and abroad including Canada, the Caribbean, South America and Asia.

4.  Star Snacks claims to be a third-generation family owned and operated business that has decades of snack manufacturing and sales experience.  The company began independently manufacturing and packaging nuts, trail mixes and

dried fruits for the retail and wholesale market in 1992.  Star Snacks' business model is marketing products with high profit margins.  Thus, Star Snacks is one of the fastest growing manufacturers in the industry and has emerged as a market leader in the nut and dried fruit categories by implementing its ability to market inferior products as high quality.[1]

### III.      JURISDICTION AND VENUE

5.  This court has jurisdiction over this civil action under the Class Action Fairness Act of 2005.  The amount in controversy exceeds the sum or value of Five Million Dollars ($5,000,000), exclusive of interest and costs; there is diversity of citizenship because named Plaintiffs and certain members of the class are citizens of a different state than Defendant, as required by 28 U.S.C. § 1332(d)(2).

6.  Venue is proper in this judicial district because Defendant conducts substantial business in this district and the events giving rise to Plaintiff's claim occurred in this district; the unlawful conduct complained of herein occurred in this district.

### IV.      STATEMENT OF FACTS

7.  Both Plaintiff, Debbie Colburn and Plaintiff Gladys Copeland purchased the Defendant's Roasted Whole Cashews within the statutory period.  Ms. Colburn

---

[1] As an example of the Defendant's employing such business model, please refer to illustration on page 5 hereof which shows the abundant poor quality cashew pieces being sold as "whole cashews".

purchased same in Jefferson County, Alabama, while Ms. Copeland purchased said

product in Montgomery County, Alabama. The following is a conformed copy of

the front of said Imperial Whole Cashews.



The following is a likeness of the back side of said Imperial Whole Cashews.



8.  Expecting that the product was only whole cashews as depicted on the front label in large font listing "WHOLE CASHEWS" and the picture on the front of the package, the Plaintiffs were surprised and disappointed when they opened said product and learned of its true contents; such was not whole cashews. The Defendant's opaque can held over 60% splits and pieces of cashews. The following

is a conformed likeness of said contents:



9.  Except for minor and irrelevant exclusions, pursuant to Ala. Admin. Code r. 420-3-20-.02 (Ala. Admin. Code [2021 Ed.]), Alabama has adopted as law in Alabama the federal food related CFRs (Code of Federal Regulations) referenced hereafter.  All of the following references to the CFR and Federal Food, Drug and Cosmetic Act (FDA) are thereby law in Alabama.  All references to federal law and standards are thus Alabama law and standards, which form the legal standard to which Defendant is required to comply.[2]

10.  Nut pieces or halves (splits) are inferior to whole nuts of the same consistency and content.  A reasonable consumer, when shopping, is typically aware that containers of whole nuts are more preferred than partial nuts.[3]  Nut splits are likewise recognized universally as inferior to whole nuts.  Cashew standards and gradation place whole cashews at the top in quality and cost, while splits are ranked next in quality and pieces toward the bottom.[4]

11.  The subject product is deceptively marketed by Defendant as solely whole cashews, when in actuality such universally is as depicted on the preceding page.

12.  The said product is in violation of a number of federal, and thus Alabama,

---

[2] Plaintiffs are not filing this action to enforce said food law and regulations; the said law and regulations form the standard to which Defendant must comply.  The cause of action are listed on pages 18 et seq.

[3] Defendant well knows that whole nuts are preferable by consumers over cashew pieces and splits; such is the reason Defendant touts the product only as "Whole Cashews", and charges substantially more for its claimed "WHOLE cashews" than for pieces of cashews.

[4] https:// caprinutindustries.weebly.com/cashew-grades.html

food regulations:

    a.  the product is deceptively marketed;

    b.  the label on the Defendant's product falsely displays a photo of only whole cashews as the contents which is untrue;

    c.  the product is misbranded under federal law and regulations (and thus Alabama law);[5]

    d.  the bold font on the product's front states only whole cashews as the contents, which causes a reasonable consumer to expect such to be the case;

    e.  the Ingredients listing on the reverse of the label lists only "CASHEWS" with no mention of splits or pieces.

13. Clearly, Star Snacks is guilty of marketing a misbranded product. Star Snacks markets a product that is deceptively labeled and formed as only WHOLE cashews, when the containers are actually a mixture of some whole but predominately splits and pieces of cashews.

14. Subsequent to Plaintiff's counsel notifying Defendant on October 28, 2022 of this impending action, Plaintiff's counsel has learned that Defendant has initiated a future modification to its subject label, which still touts the product as only Whole

---

[5] A <u>food</u> shall be deemed to be misbranded – (a) If (1) its labeling is false or misleading <u>in any particular</u>, … 21 U.S. Code § 343, Misbranded Food.

Cashews as stated herein.  The sole change by Defendant was a small font statement that "(s)ome breakage may have occurred in shipment."

15.  Defendant deceptively states such to cover up the marketing of cheaper cashews as whole.  The facts are no such breakage as Defendant asserts reasonably occurs.  Other whole cashew products do not have such "breakage."  Below is a photo of Planter's Whole Cashews with no such breakage.  Further, even whole cashew's soft version packages, have none of the breakage as Defendant claims occurs in shipment.



## V.  APPLICABLE STANDARDS

16. The "front" of a food package, according to federal (thus Alabama) regulations, is referred to as the principal display panel (PDP). *See 21 CFR 101.1.* According to the federal Food and Drug Administration (FDA), it is that portion of the package label that is most likely to be seen and depended upon by the consumer at the time of purchase.  The PDP is to be a correct statement of the products' contents.  *See 21 CFR 101.3(a) and 101.105(a).*  In this case, the picture on the PDP and the contents statement on the PDP deceptively portray that the product is solely WHOLE cashews, when such is untrue.  The Defendant has deceptively and intentionally crafted a picture and product description on the PDP which shows only whole cashews.  A reasonable consumer would therefore expect the contents to be only whole cashews.

17. Furthermore, the Ingredient List (contents) on a food label is required to be a listing of each ingredient in an accurate, not misleading manner.  *See 21 CFR 102.5 (a) and (b), 21 CFR 101.4(a).*

18. Under federal food regulations, the contents in their entirety are to also be listed on the "information panel" which is immediately to the right of the PDP.  *See 21 CFR 101.2 through 101.9 and 21 CFR 101.105.*  In this case, Defendant, markets a product that incorrectly and falsely lists only "cashews" as being the product's contents on the reverse of the package.  While the reasonable consumer would be

apt to buy the product based on the PDP content listing, in this case Defendant's product falsely portrays on the PDP <u>and</u> the information panel the contents are only whole cashews.  Under federal regulations Star Snacks is marketing a product that should have listed in the Ingredients – "cashews and cashew parts" as the contents – not simply "cashews" (see legal standard immediately below).  Obviously, the product in question shows only WHOLE cashews ("appearance of the food") in order to deceitfully compel "customer acceptance."

19.  Regarding nut splits, halves and parts, federal law is clear.  21 CFR § 101.3 states:

> (c) Where a food is marketed in various optional forms (whole, slices, diced, etc.), the particular form shall be considered to be a necessary part of the statement of identity and shall be declared in letters of a type size bearing a reasonable relation to the size of the letters forming the other components of the statement of identity; except that if the optional form is visible through the container or is depicted by an appropriate vignette, the particular form need not be included in the statement.  This specification does not affect the required declarations of identity under definitions and standards for food promulgated pursuant to section 401 of the act.

> (d)  This statement of identity shall be presented in bold type on the principal display panel, shall be in a size reasonably related to the most prominent printed matter on such panel, and shall be in lines generally parallel to the base on which the package rests as it is designed to be displayed.

However, rather than Star Snacks correctly picturing the nut contents as whole plus

halves, parts, pieces and splits, Star Snacks only pictures whole nuts.  The same with the contents' listing.   Thus, not only does Star Snacks picture the product deceptively, but also the listing of ingredients is misleading.

20. The Code of Federal Regulations respecting food labeling sets forth the extraordinary lengths that federal law expects no ounce of deception in food labeling:

> (a)   The common or usual name of a food (appearing on the container's front), which may be a coined term, shall accurately identify or describe, in as simple and direct terms as possible, the basic nature of the food or its characterizing properties or ingredients.  The name shall be uniform among all identical or similar products and may not be confusingly similar to the name of any other food that is not reasonably encompassed within the same name.  Each class or subclass of food shall be given its own common or usual name that states, in clear terms, what it is in a way that distinguishes it from different foods.
>
> (b)  The common or usual name of a food shall include the percentage(s) of any characterizing ingredient(s) or component(s) when the proportion of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance or when the labeling or the appearance of the food may otherwise create an erroneous impression that such ingredient(s) or component(s) is present in an amount greater than is actually the case.  21 CFR 102.5 (a) and (b) (emphasis added)

Star Snacks thus also violates this provision by portraying in its packaging that whole cashews "is present in an amount greater than is actually the case."  The

package universally does not contain solely whole cashews.

21. Furthermore, an extensive federal government funded study on the influence that the "front-of-pack" has on causing consumers to select a food item was conducted under auspices of the National Center for Biotechnology Information in April 2020.  The study determined, after surveying four electronic data bases that what was on the "front-of-pack" had a greater influence on consumers than other labeling.  The study's Abstract states:

> Packaging is increasingly recognized as an essential component of any marketing strategy.  Visual and informational front-of-pack cues constitute salient elements of the environment that may influence what and how much someone eats.  Considering their overwhelming presence on packaging of non-core foods, front-of-pack cues may contribute to the growing rates of overweight and obesity in children and adults.  We conducted a systematic review to summarize the evidence concerning the impact of front-of-pack cues on choices and eating behaviors.  Four electronic databases were searched for experimental studies (2009-present).  This resulted in the inclusion of 57 studies (in 43 articles).  We identified studies on children (3-12 years) and adults ($\geq$ 18 years), but no studies on adolescents (12-18 years).  The results suggest that children and adults are susceptible to packaging cues, with most evidence supporting the impact of visual cues[6].  (emphasis added) More specifically, children more often choose products with a licensed endorser and eat more from packages portraying the product with an exaggerated portion size.  Adults' eating behaviors are influenced by a range of other visual cues, mainly, package size and shape, and less so by

---

[6] A picture portraying whole cashews obviously has more appeal to the reasonable customer than does a picture of cashew pieces.

informational cues such as labels.[7]  (emphasis added)

To recap, the above learned study confirms that reasonable consumers purchase food items more by the visual cues (pictures) than by label print.  Upon information and belief, the Defendant was aware of this marketing strategy in deceptively marketing the subject nuts with a deceptive picture and deceptive statement of the contents.

22. Furthermore, regarding the photo of the product on the PDP, under federal food regulations, a photo or other likeness of a products' contents, when displayed on the PDP shall not be misleading as to the packages' contents and shall be so arranged in the photo or likeness in descending order of the package's contents with the predominant one first and so forth, with the least item last – by weight.  *See 21 CFR 101.3 and 101.4.*  Here, with Imperial Whole Cashews, Defendant markets a product that uses the PDP photo of contents to reinforce its deceptive identity as "WHOLE cashews".  The product's name and picture as only WHOLE cashews deceptively misrepresents the contents as solely whole cashews.  The deceptive image on the PDP causes the reasonable consumer again to deem falsely that the package contains only "WHOLE cashews".

23. Under federal regulations, a food shall be deemed to be misbranded if (a) its labeling is false or misleading in any particular (emphasis added), or (b) if its

---

[7] That's My Cue to Eat: A Systematic Review of the Persuasiveness of Front-of-Pack Cues on Food Packages for Children vs. Adults, Hallez, Qutteina, Raedschelders, Boen and Smits, 2020.
https://pubmed.ncbi.nim.nih.gov/32290522/

container is so made, formed, or filled as to be misleading.   SEC. 403, *Food, Drug and Cosmetics Act* (FDC) [21 U.S.C. 343].

24.  Under federal food law (and thus, Alabama law), the following acts and the causing thereof are prohibited:

(a)     The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.

(b)     The adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce.

(c)     <u>The receipt in interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded and the delivery or proffered delivery thereof for pay or otherwise</u>. Emphasis added. *See* Sec. 301**,** FDC [21 U.S.C. 331]

Star Snacks clearly violates the above section(s). Star Snack's marketing Imperial Whole Cashews in interstate commerce is an obvious violation of federal regulations and therefore a violation of Alabama's food regulations, since Defendant manufactures, markets and ships in interstate commerce said misbranded product.

25. Plaintiffs and class members purchased the Imperial Whole Cashews relying on the content of the labeling and packaging described above, and reasonably believing that the Product was/is as its label represents – solely WHOLE cashews – at the time of purchase. Defendant placed/places said product on grocery shelves in Alabama stores and throughout the United States and thereby deceptively represents

same as WHOLE cashews.  Plaintiff and the class members depended on the Defendant's said representations regarding the contents in the container as "WHOLE cashews".  Plaintiff and the class members purchased the product with the understanding that such was  WHOLE cashews and not mostly splits and pieces. Such proved untrue to Plaintiffs' and to class members' damage.  Plaintiffs and class members paid a high price for whole cashews and got an inferior product, to their damage.

26. Defendant knows, knew or should have known that Plaintiffs and other consumers in purchasing the Product would rely principally on the PDP labeling and packaging of the Product and would reasonably believe that the Product was/is only "WHOLE cashews".

27. In reasonable reliance on the labeling and packaging as described in detail above, and believing that the Product was as represented, Plaintiffs and class members have purchased the Product.  Defendant continues marketing its misbranded Star Snacks "WHOLE Cashews" as above recited, to the future and continued damage to the putative class.

28. Plaintiffs and class members were misled since they were led to believe at purchase that the Product was only whole nuts because of how the Product was/is deceptively labeled and packaged prior to purchase.  Such marketing was/is intended by Defendant to create the impression that the Product contains only whole nuts.

Such practice is continuing in stores throughout Alabama and the United States.

29. Because the Product is not as reasonably relied upon by Plaintiffs and other consumers, Defendant's marketing of a misbranded Product was and continues to be misleading and deceptive.  Plaintiffs and the putative class paid a premium price for "WHOLE cashews" but received over 60% splits and pieces to their damage.  Such continues to this day.

30. Federal law (and thus, Alabama law) leaves little room to argue against the importance that the FDA places on proper food labeling.  In fact and in law, by Defendant marketing its misbranded "WHOLE Cashews" as above stated, FDA regulations confirm that Star Snacks is <u>misleading</u> consumers by marketing misbranded food.

### MISBRANDED FOOD

**SEC. 403.** [343] a food shall be deemed to be misbranded –

Section 403(a)(1) of the Federal Food, Drug, Cosmetic Act (FD&C Act) deems a food is misbranded, if the labeling is false or misleading "in any particular."  What does "in any particular" mean?

"Misleading" covers not just false claims but also when ambiguity or inference [a label] create(s) a misleading impression."   In addition, a label may be deemed misleading for what it fails to disclose.  That is, a label can be literally true but still be misleading when it does not disclose an important fact that is "material" to consumers. **FD&C Act § 201(n)**

17

(n)  If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.[8]

31. Each consumer, due to the marketing of Imperial Whole Cashews by Defendant, has been exposed to the same or substantially similar deceptive practice by Defendant, since each container of Imperial Whole Cashews portrays the same misleading statements and images concerning its contents.  All of Imperial Whole Cashews containers deceptively convey the same message -- that such contains only whole nuts. That means that under federal law, and thus under Alabama law, **Imperial Whole Cashews packaging is unquestionably misleading and misbranded**.

32. Furthermore, Defendant charges a higher-than-normal price for its 28-ounce can of nuts.  Regardless, thinking they were getting a premium product of WHOLE cashews, Plaintiffs and class members paid the higher sales price for the Product,

---

[8] Quoted from Food Regulation, Law, Science, Policy and Practice, 2d Ed., Fortin, pp. 46 and 47.

thinking it was as represented but would have paid significantly less for the Product had they known that the Product was not as represented.  In the alternative, Plaintiffs and other consumers/class members would not have even purchased the Product at all had they known that the Product was principally partial nuts and not as represented.  Therefore, Plaintiffs and class members in purchasing the Product suffered injury in fact and lost money as a result of Defendant's false, unfair, and misleading practices, as described herein.  Further, such marketing practice is continuing by Defendant.

33. As a result of its misleading marketing practice, and the harm caused to Plaintiffs and putative class members, Defendant should be enjoined from shipping, receiving, storing and marketing a misbranded product by falsely representing that the Product is only WHOLE cashews, when such is far from true.

## CLASS ALLEGATIONS

34.  Plaintiffs bring this case individually, and as a class action, pursuant to R. 23, Fed. R. Civ. Proc., on behalf of all persons who have purchased Defendant's Imperial Whole Cashews in the United States and Alabama as covered immediately below.

35.  Plaintiffs seek to represent the following Class:

- **Alabama Class: All persons residing in the State of Alabama who purchased Imperial Whole Cashews in the last six (6) years.**

and:

- **The National Class: All persons residing in the United States who purchased Imperial Whole Cashews in the last six (6) years;**

Excluded from the Classes are the following:[9]

i.  Any and all federal, state, or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

ii.  Individuals, if any who timely opt out of this proceeding using the correct protocol for opting out;

iii.  Current or former employees of Defendant;

iv.  Individuals, if any, who have previously settled or compromised claim(s) relating to Imperial Whole Cashews; and

v.  Any currently sitting federal judge and/or person within the third degree of consanguinity to any federal judge.

36.  Plaintiffs seek a judgment on a Class-wide basis for themselves and the Class under the counts that follow.

37.  Defendant violated the rights of each Member of the Class in the same fashion based upon Defendant's uniform actions in its marketing, producing, selling, design and distributing of its Imperial Whole Cashews.

---

[9] Reference hereinafter to "class" shall include both the Alabama Class and the National Class.

38. Plaintiff should be approved to maintain this action as a class action for the following reasons:

39. **Numerosity:**  Members of the Class are so numerous that individual joinder is impracticable.  The proposed Class contains thousands of Members.  The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible.

40. **Common Questions of Fact and Law Exist:**  Common questions of fact and law exist as to all Members of the Class, including whether Defendant marketed, designed, produced and distributed the Product with its representations, implied and expressed warranties, breaches of agreement in fact and implied, and deceptive trade practice.

41. **Typicality:**  Plaintiffs' claims are typical of the claims of the Class.  State and federal food law form the framework of Defendant's legal requirements as reasonable and necessary standards by which Defendant is to comply.  Violations of same impose the following causes of action.  Furthermore, Plaintiff and all Members of the Class sustained monetary and economic injuries arising out of Defendant's unlawful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all putative Class Members.

42. **Adequacy:**  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class – all seek redress and prevention for the same unlawful conduct.  Plaintiffs have retained Counsel who are

competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel. Plaintiffs' claims, like those of the Class, are antagonistic to Defendant.

43. **Predominance:** Common questions of fact and law predominate over any questions affecting individual Class Members.

44. **Superiority:** A class action is superior to other available means of fair and efficient adjudication. The injury suffered by each individual Class Member is very small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be impossible for all Members of the Class to effectively redress the wrongs done to them on an individual basis. Therefore, a class action is the only reasonable means by which Plaintiffs and the Class may pursue their claims. Moreover, even if the Members of the Class could pursue such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, by the complex legal and factual issues of this case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

45. Plaintiffs bring this action for themselves and on behalf of a class of individuals in the State of Alabama and throughout the United States who purchased said product on the following counts:

## COUNT I

## DECEPTIVE PRACTICE STATUTES

### (On Behalf of the Plaintiff and the Class)

Plaintiffs adopt paragraphs 1. through 45. as if fully set out herein.

46. Plaintiffs, for themselves and on behalf of the class, bring this action under the consumer protection statutes of the following states:

a.    Alabama Deceptive Trade Practices Act, ALA. Code § 8-19-1, *et. seq.*;

b.    Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et. seq.*;

c.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et. seq.*;

d.    California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et. seq.* and Unfair Competitive Law, Cal. Bus. Prof. Code §§ 17200 – 17210 *et. seq.*;

e.    Colorado Consumer Protection Act, Colo Rev. Stat § 6-1-101, *et. seq.*;

f.    Connecticut Unfair Trade Practices Act, Conn. Gen Stat § 42-110a, *et. seq.*;

g.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et. seq.*;

h.    District of Columbia Consumer Protection Procedure Act, D.C. Code §§ 28-3901, *et. seq.*;

i.      Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes*§ 501.201, *et. seq.*;

j.      Georgia Fair Business Practices Act, § 10-1-390 *et. seq.*;

k.      Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et. seq.* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statute § 481A-1, *et. seq.*;

l.      Idaho Consumer Protection Act, Idaho Code § 48-601, *et. seq.*;

m.      Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et. seq.*;

n.      Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et. seq.*;

o.      Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et. seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et. seq.*;

p.      Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et. seq.*;

q.      Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et. seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et. seq.*;

r.      Massachusetts Unfair and Deceptive Practices Act, Mass. Gen Laws ch. 93A;

s.      Michigan Consumer Protection Act, §§ 445.901, *et. seq.*;

t.      Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et. seq.*; and Minnesota Uniform Deceptive Trade Practices Act, Minn Stat. § 325D.43, *et. seq.*;

u.      Mississippi Consumer Protection Act, Miss. Code An. §§ 75-24-1, *et. seq.*;

v.      Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*;

w.      Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et. seq.*;

x.      Nebraska Consumer Protection Act, neb. Rev. Stat. § 59 1601 *et. seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et. seq.*;

y.      Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et. seq.*;

z.      New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et. seq.*;

aa.     New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et. seq.*;

bb.     New Mexico Unfair Practices Act, N.M. Sta. Ann. §§ 57 12 1, *et. seq.*;

cc.     New York General Business Law ("GBL") §§ 349 & 350;

dd.     North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et. seq.*;

ee.     Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109;

ff.     Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et. seq.*;

gg.     Oregon Unfair Trade Practices Act, Ore. Rev. Stat. § 646.608€ & (g);

hh.    Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1 *et. seq.*;

ii.    South Carolina Unfair Trade Practices Act, S.C. Code Law § 39-5-10, *et. seq.*;

jj.    South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et. seq.*;

kk.    Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et. seq.*;

ll.    Vermont Consumer Fraud Act, Vt. Stat. Ann. Tit. 9, § 2451, *et. seq.*;

mm.    Washington Consumer Fraud Act, Wash. Rev. Code § 19.86/0101, *et. seq.*;

nn.    West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et. seq.*;

oo.    Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et. seq.*;

47.  Defendant's acts, practices, labeling, advertising, packaging, representations and omissions, while unique to the parties, have a broader impact on the public.

48. As reasonable consumers, Plaintiffs and class members desired to purchase the Product with the reasonable assumption that the subject goods complied with applicable law, regulations and the represented contents, when such did not. Defendant is guilty of marketing said goods:

- so that such causes confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services;

- by misrepresenting that said goods have sponsorship, approval,

characteristics, ingredients, uses, benefits or qualities that they do not have;

- by misrepresenting that said goods are of a particular standard, quality or grade;

- by marketing the said goods in violation of law;

- by engaging in an unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

49. After mailing on October 28, 2022 a claim notice to Defendant, pursuant to law and not receiving any constructive response, Plaintiffs assert a statutory claim under the Alabama Deceptive Practices Act, Code of Alabama, §§ 8-19-1, et seq. and the statutes of the other aforementioned states.

50. By engaging in the aforementioned unlawful and deceptive acts, Defendant caused monetary damage to Plaintiffs and a class of similarly situated persons by engaging in a trade or commerce harmful to Plaintiff and the putative class.

51. Plaintiff individually and on behalf of the class requests the following relief:

a. the relief and damages allowed by each jurisdiction of the residences of each putative class member; including but not limited to any allowed multiple of damages;

b. appropriate injunctive relief;

c. attorneys' fees and costs; and

d.  such other, further and general relief for which Plaintiff and the class might be equitably qualified.

## COUNT II

**BREACH OF WARRANTY**

**(On Behalf of the Plaintiff and the Class)**

52.  Plaintiffs reallege and incorporate by reference the preceding paragraphs numbered 1. through 45. of this Complaint as if fully set forth herein.

53.  Plaintiffs and the class members formed sales agreements with Defendant at the time they purchased the product from Defendant.  The terms of such contracts included implied and express promises and affirmations of fact by Defendant that said products were being marketed in compliance with applicable law and that the product contained contents commensurate with the size of the container.  The Defendant's representations of the product's contents amounted(s) to a breach of warranty.

54.  Furthermore, the implication of said marketing is that a requirement of law became part of the basis of the bargain and is part of the contract between Defendant on the one hand and Plaintiffs and the class members on the other hand.

55. The implied and express affirmations made by Defendant was made to induce Plaintiffs and the class members to purchase Imperial Whole Cashews from Defendant.

56. Defendant intended that Plaintiffs and the class members would rely on said affirmations in making their purchases, and Plaintiffs and the class members did so.

57.  All conditions precedent to Defendant's liability under these warranties have been fulfilled by Plaintiffs and the class members (a.) giving Defendant sufficient statutory notice before this filing and (b.) by paying for the goods at issue. Additionally, Defendant had actual and/or constructive notice of their own false marketing and sales practices but to date have taken no action to remedy their breaches of implied or express warranty.

58. Defendant breached the terms of the warranty because the product purchased by Plaintiffs and the class members did not conform to the affirmations of fact by Defendant – that they were being sold according to law by misrepresenting the can's contents as being commensurate with the representations on the product label.  In fact, they were not.

59. As a direct and proximate result of Defendant's breach of warranty, Plaintiffs and the class members have been injured and have suffered actual damages because the subject product, upon attempting to use same were rendered not merchantable for the intended purpose by violating federal and State food laws, causing Plaintiff and the class to be damaged.

## COUNT III

## BREACH OF CONTRACT

## (On Behalf of the Plaintiff and the Class)

60. Plaintiffs reallege and incorporate by reference the preceding paragraphs numbered 1. through 45. of this Complaint as if fully set forth herein.

61. Plaintiffs and the class members entered into implied agreements with Defendant.

62. The agreements provided that Plaintiffs and the class members would pay Defendant for its 28 oz. Imperial Whole Cashews.

63. The contracts further provided that Defendant would provide Plaintiffs and the class members subject cashews as required by law with contents commensurate with its containers' representations.

64. Plaintiffs and the class members paid Defendant for the product that they purchased, and satisfied all other conditions of the agreements.

65. Defendant breached the implied agreements with Plaintiffs and the class members by failing to comply with the material terms of providing the product as required by law by being misbranded as above recited.

66. As a direct and proximate result of Defendant's breach, Plaintiffs and the class members have been injured and have suffered actual damages due to the product being less than as represented.

## COUNT IV

## NEGLIGENCE PER SE

### (On Behalf of the Plaintiff and the Class)

67. Plaintiffs reallege and incorporate by reference the preceding paragraphs numbered 1. through 45. of this Complaint as if fully set forth herein.

68. Plaintiffs alternatively claim that Defendant in a negligent manner marketed and sold to the class the product heretofore mentioned.

69. Plaintiffs claim that said marketing of Imperial Whole Cashews without regard to the legal requirements, was done and is presently continuing in a negligent manner and as a proximate result thereof, the Plaintiffs and the class were damaged as herein claimed.

70. Plaintiffs further alleges that said marketing of Defendant's product is violative of Alabama and federal legal requirements. Therefore, Defendant is guilty of the Plaintiffs' claims herein and should be restrained and be caused to cease; that said actions by Defendant is negligence per se by violating statutes controlling same.

71. Plaintiff prays that due to the damage proximately caused by Defendant to Plaintiffs and the class that relief is demanded as hereinafter requested.

## COUNT V

### WANTONNESS

### (On Behalf of the Plaintiffs and the Class)

72. Plaintiffs reallege and incorporate by reference the preceding paragraphs numbered 1. through 45. of this Complaint as if fully set forth herein.

73. Plaintiffs claim that Defendant in a wanton manner has marketed and is continuing to market to the class the product heretofore mentioned.

74. Plaintiffs claim that said marketing of the subject product without regard to the legal requirements, was done and is presently continuing by Defendant in a wanton manner and as a proximate result thereof, the Plaintiffs and the class were damaged as herein claimed.

75. Plaintiffs further allege that said marketing by Defendant of misbranded products in a wanton manner, is violative of legal requirements throughout the United States and should be restrained and be caused to cease, as hereinafter claimed.

76. Plaintiffs pray that due to the damage proximately caused by Defendant to Plaintiffs and the class that punitive monetary relief is also demanded as hereinafter requested.

## COUNT VI

## CLAIM FOR INJUNCTIVE RELIEF

### (On Behalf of the Plaintiff and the Class)

77. Plaintiffs reallege and incorporate by reference the preceding paragraphs numbered 1. through 45. of this Complaint as if fully set forth herein.

78. Plaintiffs and the putative class, need and are entitled to, an order for declaratory relief declaring that Defendant's sales practices alleged herein violate the Alabama Food Code, and the laws of the other states listed in Count One and by declaring that the aforementioned refusal by Defendant to follow the applicable law is in violation of the requirement to place the true nature of the product on the package label.

79. Defendant is presently continuing each of these complained-of practices in Alabama and the United States.  Plaintiffs have previously served legal notice on Defendant to comply with legally required labeling as described above.  Defendant has refused and continues to knowingly ignore such responsibility. This matter should be settled and a declaratory judgment will assist in same.  Plaintiffs therefore allege that the requested declaratory judgment is in the public interest.

80. Plaintiffs on behalf of the class have a significant interest in this matter in that she has been, and will again in the future, along with putative class members, be continuously subjected to the unlawful policies and practices as alleged herein.  As

with Plaintiffs, members of the putative class are continuously and unwittingly subjected to the Defendant's knowing disregard of the Alabama Food Code, the laws of the states where putative class members other than Alabama residents reside, and FDA regulations and are regularly subjected to Defendant's deceptive marketing.

81. Further, Plaintiffs allege on behalf of the afore-mentioned putative class that class members routinely purchase products from Big Lots and other locations where Defendant sells its products.  They are entitled to know that the purported product and similar canned Star Snacks Whole Cashews will legally display on its labels its true contents at the time of purchase.  Until a change is legally declared, Plaintiffs and members of the public will be regularly subjected to Defendant's unlawful conduct which is alleged herein and will be subject to such conduct in the future.

82. Based on the foregoing, a justiciable controversy is presented in this case, rendering declaratory judgment appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this case be certified and maintained as a class action and that judgment be entered in favor of Plaintiffs and the class members against Defendant as follows:

A. Enter an order certifying the proposed classes, designating Plaintiffs as the representatives for the class members that they seek to represent, and designating the undersigned as class counsel;

B.      Declare that Defendant is financially responsible for notifying all class members of Defendant's deceptive manufacturing, shipping, advertising, sales, and marketing practices alleged herein;

C.      Award damages to Plaintiffs and members of the class in an amount appropriate to compensate them for purchasing the product and/or as provided by applicable law as statutory damages;

D.      Award multiple damages to the extent provided by applicable law;

E.      Find that Defendant's conduct alleged herein be adjudged and decreed in violation of the law cited above;

F.      Grant injunctive and declaratory relief to end the challenged conduct;

G.      Grant reasonable attorneys' fees pursuant to law and as otherwise permitted by statute, with reimbursement of all costs and expenses incurred in the prosecution of this action; and

H.      Grant such other relief as this Court deems just and proper.

Respectfully submitted,

BY:   /s/ *Charles M. Thompson*
Charles M. Thompson, Esq. THO019
ASB-6966-P77C
2539 John Hawkins Pkwy.
Suite 101-149
Hoover, AL 35244
(205) 995-0068
Fax (866) 610-1650
Email: cmtlaw@aol.com

35

/s/ R. Stephen Griffis
R. Stephen Griffis
ASB-4694-I61R
R. STEPHEN GRIFFIS, PC
2100 Riverhaven Drive, Suite 1
Hoover, Alabama 35244
Phone: 205-402-7476
Email: rsglaw@bellsouth.net


**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**


*/s/ Charles M. Thompson*
Charles M. Thompson
Attorney for Plaintiff



**SERVE DEFENDANT via certified mail at this address:**

**Star Snacks, LLC**
105 Harbor Drive
Jersey City, NJ 07305